## Spicer et al. v. Elmore.

Nov. 20, 1942.

Vest & Vest for appellants.

H. K. Northcutt and H. W. Alexander for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

On February 12, 1939, the appellant, E. V. Spicer, became the purchaser at decretal sale of a farm, formerly owned by his deceased father, which was sold in settlement of the latter's estate. J. M. Elmore, then husband of appellee, signed the purchase-money bonds amounting to $5,400 as surety. In order to protect his surety Spicer executed and delivered to him a writing by which it was agreed that if the surety were compelled to pay the purchase-money bonds Spicer would execute an assignment of his bid and have deed made to the surety. This writing further provided that should deed thus be made to the surety, Elmore, the farm would be conveyed to Spicer by Elmore upon payment to the latter of the amount paid out by him.

Elmore, the surety, died on November 9, 1939, and about one week after his death Spicer and his wife consulted Mrs. Elmore to see if she would carry on the contract in her deceased husband's place. They were informed that she would be unable to do so and the writing above referred to was turned over to the Spicers by

Mrs. Elmore although it had been given to Elmore for his protection. In January, 1940, John Elmore, a brother of appellee's deceased husband who acted as her agent in all the matters hereinafter mentioned, secured the writing from the Spicers. The reason for turning over the writing to him does not clearly appear in the record.

A rule was issued against appellee, as administratrix of her deceased husband, to show cause why the purchase-money bonds should not be paid and on May 1, 1940, the bonds, amounting to $5,794.20, were paid by appellee out of her individual funds. On May 2, 1940, Spicer assigned his bid to her and commissioner's deed was executed conveying the farm to her. On May 3 a writing was executed between appellants and appellee the substance of which was: appellants became tenants of appellee and each of them was to have one-half of the crops; appellants were given five months from date to pay appellee the amount of the bonds plus interest and expense incurred by appellee and plus "such reasonable compensation as the parties agree to" and upon the payment of such sums appellee was to reconvey the property to appellants; in the event of the failure of appellants to exercise the option given them appellee was given the right to enter on the premises and make such improvements as she desired and the further right to give appellants notice to vacate within thirty days from the receipt of notice. It was further provided that if appellants failed to "redeem" the property they should pay interest on the purchase money paid by appellee. The latter provision was apparently intended to provide for the payment of reasonable rent.

The five months' option or redemption period provided by the contract expired without any action taken by appellants in the way of exercising the option or making redemption.

On October 30, 1940, after the expiration of the five months, appellants paid to appellee interest to date on the purchase money paid by her and at the same time it was agreed that they should continue to remain in possession of the property as tenants and pay $45 per month rent. Payment of $45 was made for the November rent at this time. It was also then orally agreed that the $45 per month rent should be continued "until they redeemed the property." No definite time was fixed for this

continued tenancy or period of redemption but it was apparently at least for the winter months. Appellants also paid the $45 monthly rent for December and January.

Appellants made arrangements to borrow $7,000 on the farm and other security in order to redeem the property, or exercise their option, but a disagreement arose as to the amount payable. Some time during the month of February word was sent by appellants to John Elmore, appellee's agent, that appellants were ready to pay $6,000 and have the property conveyed to them. This notice was communicated to Elmore by H. K. Northcutt, an attorney, and appellants were notified by this attorney that appellee was not interested in reselling the property at that price. Appellee was willing to convey the property to them but wanted $7,000.

Following the disagreement between the parties as to the amount to be paid for the property appellee gave notice to appellants to vacate and upon their failure to do so a forcible detainer proceeding was instituted. This action was then filed by appellants against appellee praying that the transactions in question be construed as a mortgage and that the appellee be required to execute to them a deed "simultaneously with and as a part of a simultaneous transaction upon the payment by the plaintiffs to the defendant, Jennie Elmore, of the amount found to be due by the court on plaintiff's indebtedness." The chancellor denied the relief sought and appellants appeal from that judgment.

It is appellants' contention that the transaction should be construed to be, in effect, a mortgage. They insist that the decision in Talley et al. v. Eastland et al., 259 Ky. 241, 82 S. W. (2d) 368, is controlling of the controversy. On the other hand, appellee contends that the contract was merely an option to purchase or conditional sale controlled by the decision in Miracle v. Stone, 190 Ky. 610, 227 S. W. 1011.

Rules for the determination of controversies of this character were laid down in the two cases mentioned and in the later case of Spears et al v. Atkins, 284 Ky. 769, 145 S. W. (2d) 1064. It is not necessary to repeat them here. From those cases and all others decided in this court it clearly appears that in order for a deed absolute on its face to be declared a mortgage the relation of

debtor and creditor must exist between the grantee in such a deed and one who seeks to have it declared a mortgage, although it is not necessary that the deed or debt be evidenced by express covenant.

In the case before us the relation of debtor and creditor is clearly nonexistent. By the terms of the contract between the parties appellants were merely given an option to pay the money and receive a conveyance of the property. Nothing in the contract bound them to pay. Were the situation reversed and appellee seeking judgment for the purchase money paid out by her, we would clearly be called on to hold that no obligation of payment was contained in the contract or to be implied in the circumstances.

Miracle v. Stone, supra, is, in our opinion, conclusive against appellants' contention. There Jeffries purchased land at decretal sale at the request of Stone and deed was executed to Jeffries. The latter gave Stone a writing providing that if Stone paid the purchase money and interest before maturity of the bonds and in addition paid $200 to Jeffries, he would cause the property to be reconveyed. The purchase-money bonds were not paid at maturity by Stone nor was the $200 paid. A few days after the maturity date Jeffries conveyed to Miracle. Stone sought to declare the transaction a mortgage, asserting that Miracle had actual knowledge of the state of the title. It was held that the writing executed by Jeffries was a mere option to purchase and that the transaction was a conditional sale. The basis of the decision was that the relation of debtor and creditor did not exist between Stone and Jeffries.

In the present case when appellee paid the purchase-money bonds and took the assignment of purchase and received a deed for the property her situation became in all respects similar to that of Jeffries when deed was made to him. The contract between appellants and J. M. Elmore was completely abrogated and appellants' rights were then to be determined under the new writing delivered to them by appellee, and by this writing appellants were given a mere option to purchase, coupled with a tenancy—the relation of debtor and creditor did not exist by virtue of the contract and the circumstances were not such that there was any implied obligation of repayment on the part of appellants.

Talley v. Eastland, supra, relied on so strongly by appellee, is readily distinguishable from the case before us. There a deed was executed containing the provision "parties of the first part are hereby given one year from date of this deed to redeem said land by paying said sum of $2000 without interest but otherwise this deed shall become absolute." [259 Ky. 241, 82 S. W. (2d) 369]. The effect of the holding was that the deed was never intended by the parties to be an absolute deed since it provided that it became absolute only on Talley's failure to redeem within a year. The court said that since the deed became absolute on failure to redeem then it was not absolute before that time and, if not absolute, it was a mortgage. It was further said that since the deed was in the beginning a mortgage, it continued to be such under the maxim "Once a mortgage always a mortgage." The deed we are dealing with in the case before us stands on an entirely different footing since it was an absolute deed executed to appellee by the commissioner.

As indicating that the parties themselves construed the writing as an option which had expired is the fact that after the expiration of the five months given appellants within which to purchase the property a new oral agreement was made by which appellants were to remain in possession of the property as tenants upon the payment of $45 per month rent. Appellants did not continue to hold under the contract but under the oral agreement. Such oral agreement, made after the expiration of the five months' period, though it contemplated a redemption of the land by appellants as long as they were paying rent, would not afford a sufficient basis to warrant the relief sought by appellants since it is plainly within the statute of frauds, KRS 371.010 (K. S. sec. 470). A contract required to be in writing which has expired according to its terms may not be revived by oral agreement. Cincinnati, N. O. & T. P. R. Co. v. Depot Lunch Room, 190 Ky. 121, 226 S. W. 387; McConathy v. Lanham, 116 Ky. 735, 76 S. W. 535; 27 C. J. 227. As a matter of fact, appellants' whole argument is addressed to the proposition that they had the right of redemption under the written contract and not pursuant to oral agreement made after the expiration of the five months' period.

The concluding paragraph of the writing between the parties reads as follows:

"It is further agreed that first parties shall pay in

addition to all sums hereinbefore mentioned interest on $5,794.20 in the event first parties should fail to *redeem* the property herein described.''

It is argued by appellants that the use of the word ''redeem'' and the provision for the payment of interest clearly indicate that the relation of debtor and creditor existed but we do not see it in that light. The word ''redeem'' was clearly intended to refer to the exercise of the option to purchase which appellants admittedly had for a period of five months and the provision for the payment of interest was operative only in the event of *failure* to exercise the option. The interest proviso was clearly intended by the parties to provide for a payment of rental on the farm during the five months' period the option was in effect in the event the option was not exercised. This construction was also placed on the writing by appellants as is indicated by the fact that on October 30 they paid interest and made a new oral agreement to continue in possession on the payment of $45 per month rent.

We have given careful consideration to all circumstances surrounding the transaction and cannot escape the conclusion that appellants were given a mere option which they failed to exercise according to its terms.

Judgment affirmed.